LEIGH M. CLARK, Retired Circuit Judge.
Appellant challenges the judgment of the trial court adjudging him guilty, on his plea of guilty, of “Attempted Robbery as charged in the indictment” and sentencing *127 him to imprisonment for fifteen years. He urges that there was not full compliance with the requirements of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Without fully agreeing with any or all particulars of appellant’s insistence, we conclude that there was not a compliance with all of the material requirements of Boykin, supra, and now set forth an explanation of the conclusion.
The indictment charged in pertinent part:
“Carl Russell ... did, in the course of committing a theft of lawful currency of The United States of America, the property of Leontyne Anderson, threaten the imminent use of force against the person of Leontyne Anderson, with the intent to compel acquiescence to the taking of or escaping with the property, while the said Carl Russell was armed with a deadly weapon, to-wit: a pistol, in violation of § 13A-8-41 of the Code of Alabama
The crime charged constitutes robbery in the first degree as defined by Code of Alabama 1975, § 13A-8-41(a)(l) which provides: “A person commits the crime of robbery in the first degree if he violates section 13A-8-43” and is “armed with a deadly weapon or dangerous instrument; or ... . ” The record proper and the transcript of the proceedings show a commendably patient effort by the trial court, to be assured that defendant desired to plead guilty and to comply with all constitutional and legal requirements before it rendered the judgment of conviction and sentence, but it encountered an extraordinarily trying and complicated situation, which is hereafter partly shown.
The judgment was taken on April 1,1981, the date upon which the case was set for trial. Defendant had been arraigned on January 20,1981, and an attorney was then appointed for him by reason of his indigen-cy and he had entered a plea of not guilty. When the case was called for trial on April 1, the transcript shows that the following promptly occurred:
“THE COURT: All right, this is State of Alabama vs. Carl Andrew Russell. How old are you?
“THE DEFENDANT: Twenty-three.
“THE COURT: Now, you have had your probation revoked?
“THE DEFENDANT: Probation?
“THE COURT: Yes, have you been on probation?
“MR. DEAN: [Counsel for the State]: Judge, We found out that he had had a prior record.
“THE COURT: Okay, let me look at it.
“MR. DEAN: Mr. Green [Probation Officer] knew about it.
“MR. BOX [Defendant’s attorney]: Yes, I don’t understand all these abbreviations, ’76, Burglary Second .. .
“THE COURT: What is the ‘four years renit [sic].’ What is that?
“MR. GREEN: He was given four years probation in 1976. I was his probation officer, and his probation was revoked, and he has two prior convictions. And the reason Mr. Box is unaware of it, because these convictions occurred prior to the Judicial Article and, of course, the District Court records do not reflect those convictions. Judge, I had Mr. Russell on probation. ‘
“THE COURT: You mean you are considering the Habitual Offender Law now?
“MR. DEAN: Yes, sir. We have a person convicted of two prior felonies. We were going to offer eight years, Judge, and we will give the minimum on the Habitual Offender, and offer 15 to plead guilty.
“THE COURT: Do you understand what they are saying?
“THE DEFENDANT: Yes, sir. This is why I asked for a proper time to get an attorney.
“THE COURT:' Well, the proper time was a long time ... I appointed him in January, didn’t I?
“MR. BOX: I didn’t know about those other felony convictions, Judge.
“MR. DEAN: I didn’t either, Judge, but we can’t recommend eight years on somebody ...
“THE COURT: What is the maximum penalty he can get, then?
*128 “MR. DEAN: 99 to life.
“THE COURT: You want to go back and talk to Mm, what they are offering him? Do you want to go back and talk to your client about what they are offering him?
“MR. BOX: Yes.
“(Brief recess)
“(Court resumed following brief recess.)
“THE COURT: Step before me, now. I need to go over this with you, now. All right, you are Carl Russell, is that right?
“THE DEFENDANT: Yes, sir.
“THE COURT: And you are how old, 23 years old?
“THE DEFENDANT: Yes, sir.
“THE COURT: And how far did you go in school?
“THE DEFENDANT: To the 11th.
“THE COURT: All right, Mr. Reporter, this is State vs. Carl Russell, and it is Case No. CC80-2330. You went through the 11th grade?
“THE DEFENDANT: Yes, sir.
“THE COURT: You can read and write?
“THE DEFENDANT: Yes, sir.”
After a few other appropriate questions and defendant’s answers assuring the court that he had talked with his attorney, waived his right to a jury trial and knew what he was “doing” by pleading guilty, the colloquy continued as follows:
“THE COURT: And you want to give up your right to present your own case, call your own witnesses?
“THE DEFENDANT: They say I don’t have time to get my witnesses. That’s what I want time to get, my witnesses.
“THE COURT: Well, do you want to plead, or do you want a trial?
“THE DEFENDANT: I want to plead.
“THE COURT: We are not worried about witnesses now. You want to give up your right to call witnesses?
“THE DEFENDANT: Yes.
“THE COURT: Your right to have the State’s witnesses cross-examined?
“THE DEFENDANT: Yes.
“THE COURT: And you give up your right to remain silent? You want to plead guilty? I want you to tell me.
“THE DEFENDANT: Yes, sir.
“THE COURT: What did you do now?
“THE DEFENDANT: Pleaded guilty.
“THE COURT: Now, what did you do? You say you are guilty, what did you do?
“THE DEFENDANT: What did I do?
“THE COURT: Yes. You have got to tell me what you did now in order to plead guilty.
“THE DEFENDANT: Talking about the case?
“THE COURT: Yes, I am talking about the case.
“THE DEFENDANT: Attempted robbery.
“THE COURT: Where was it?
“THE DEFENDANT: Where was it? I don’t know.
“THE COURT: You don’t remember where it was?
“THE DEFENDANT: I think on Mason Street somewhere.
“THE COURT: In Mobile, Alabama?
“THE DEFENDANT: Yes, sir.
“THE COURT: Day or night?
“THE DEFENDANT: Day.
“THE COURT: And what did you do?
“THE DEFENDANT: What did I do?
“THE COURT: Yes.
“THE DEFENDANT: I didn’t do nothing.
“THE COURT: Well, what are you pleading guilty for?
“THE DEFENDANT: I ain’t got no other choice. I asked you to give me time to get a lawyer. You said I ain’t have time to get a lawyer. You didn’t have time.
“THE COURT: You told me you wanted to plead guilty?
“THE DEFENDANT: Yes, I am saying before .. .
“THE COURT: Do you remember these people here?
“THE DEFENDANT: Yes.

“THE COURT: What happened ... why did they arrest you? What did you do that you got arrested for?
“THE DEFENDANT: They said I come in their house waving a pistol, or something like that.
*129 “THE COURT: Now, did you do that or didn’t you?
“THE DEFENDANT: I guess I got to take the time. You won’t give me the time
“THE COURT: No, let’s talk about ... Did you go in the house and wave the pistol?
“THE DEFENDANT: No, I didn’t wave no pistol.
“THE COURT: Did you go in the house, and did you get some money from them?
“THE DEFENDANT: No, sir.
“MS. PATTERSON [Counsel for the State]: Judge, excuse me. No money was actually taken.
“THE COURT: All right, just tell me what you did. That’s all I want to know.
“THE DEFENDANT: I just went in the house, that’s all.
“THE COURT: Did you say anything to them?
“THE DEFENDANT: No, sir.
“THE COURT: Whose house was it?
“THE DEFENDANT: One of them.
“THE COURT: Now, you are talking that way, and I’m up here.
“THE DEFENDANT: I am saying one of them out of the three. I don’t really know.
“THE COURT: You did go in their house?
“THE DEFENDANT: Yes, sir.
“THE COURT: And why did you go in there?
“THE DEFENDANT: Went in there to talk, you know, went in there and .. .
“THE COURT: If you don’t tell me what you are going to do, I am going to have to put you ... If you don’t tell me what you did, I am going to have to put you to trial. Did the lawyer talk to you about all these things?
“THE DEFENDANT: No, he didn’t explain ...
“THE COURT: Did he explain the penalty you are facing?
“THE DEFENDANT: Yes, sir.
“THE COURT: Now, do you want to plead guilty or not?
“THE DEFENDANT: Judge, I want to plead guilty.
“THE COURT: Now, you tell me what you did. You have to tell me what you did, or I am not going to let you plead guilty.
“THE DEFENDANT: Well, I guess I went in there and attempted to rob.
“THE COURT: You went in there to attempt to rob one of these ladies here?
“THE DEFENDANT: Yes.
“THE COURT: And that’s what you did?
“THE DEFENDANT: No, I didn’t do it.
“THE COURT: You attempted to rob them?
“THE DEFENDANT: Yes.
“THE COURT: But you didn’t ever rob them?
“THE DEFENDANT: No, sir.
“THE COURT: Is there a motion by the State at this time?
“MS. PATTERSON: Judge, there is. The State moves to amend the charge for Robbery in the First Degree to Attempted Robbery, which is a class B felony.
“THE COURT: Any objection by the defense?
“MR. BOX: No, sir.
“THE COURT: Motion granted. Charge is reduced to Attempted Robbery. And you want to plead guilty to Attempted Robbery, is that right?
“THE DEFENDANT: Yes, sir.
“THE COURT: Do you want to waive all your constitutional rights, as you have already done, as I have gone over with you as to the charge against you of robbery, is that right?
“THE DEFENDANT: Yes, sir.
“THE COURT: And you understand you don’t have to plead guilty, you are doing that because you think it is in your best interest?
“THE DEFENDANT: Yes, sir.
“THE COURT: And you are guilty of Attempted Robbery is that what you are saying to the Court?
“THE DEFENDANT: Yes, sir.
“THE COURT: All right, go ahead and fill out this form here with him right now.
“You filled out this form with your lawyer, right?
*130 “THE DEFENDANT: Yes.”
The form just referred to in the quoted material, signed by defendant and his attorney, included a comprehensive recital of his acknowledgment and understanding of his constitutional rights and follows in substance the contents of the Ireland form, as found in the Appendix in Ireland v. State, 47 Ala.App. 65, 250 So.2d 602 (1971). The crime stated in the form is “Attempted Robbery.” The remainder of the transcript as to what occurred before the entry of the judgment of conviction and sentence is as follows:
“THE COURT: And you are pleading guilty to Attempted Robbery, and you understand everything on this form that you have signed? You can read and write, you went through the 11th grade. All right, that’s your signature on the back, right?
“THE DEFENDANT: Right.
“THE COURT: For the record, the Court finds you voluntarily, knowingly, understanding^ and intelligently entered a plea of guilty to the charge of Attempted Robbery. Do you want to say anything now before I proceed to sentence you, which you have a right to do?
“THE DEFENDANT: No, sir.
“THE COURT: On your plea of guilty to Attempted Robbery, the Court finds you guilty. I find that you knowingly entered a plea of guilty; that the Court has been apprised of previous felony convictions, two previous felony convictions, which classifies you as a Habitual Offender under the new law of Alabama.
“THE DEFENDANT: Yes, sir.
“THE COURT: Which penalty under the new law would be from 15 years to 99 years or life. By virtue of the fact that this is a situation where you are still relatively young ...
“THE DEFENDANT: Yes, sir.
“THE COURT: ... I am going to give you the minimum of a 15-year sentence. So the Court adjudicates your punishment at 15 years in the State Penitentiary-
“(All proceedings ended on April 1,1981.)”
The Criminal Code of Alabama, Code of Alabama 1975, Title 13A, § 13A-4-2, provides, in part:
“(a) A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense.

“(d) An attempt is a:
“(1) Class A felony if the offense attempted is murder.
“(2) Class B felony if the offense attempted is a Class A felony.
“(3) Class C felony if the offense attempted is a Class B felony.
“(4) Class A misdemeanor if the offense attempted is a Class C felony.
“(5) Class B misdemeanor if the offense attempted is a Class A misdemeanor.
“(6) Class C misdemeanor if the offense attempted is a Class B misdemeanor.
“(7) Violation if the offense attempted is a Class C misdemeanor. (Acts 1977, No. 607, § 1005.)”
The common law crime of robbery, which was without degrees, has been superseded by the Alabama Criminal Code, effective January 1, 1980, proscribing robbery in the first degree (§ 13A-8-41), robbery in the second degree (§ 13A-8-42), and robbery in the third degree (§ 13A-8-43). By said sections respectively robbery in the first degree is designated a Class A felony, robbery in the second degree a Class B felony and robbery in the third degree a Class C felony. The Alabama Criminal Code, § 13A-5-6 (1981 Cum.Supp.), provides:
“(a) Sentences for felonies shall be for a definite term of imprisonment, which imprisonment includes hard labor, within the following limitations:
“(1) For a Class A felony, for life or not more than 99 years or less than 10 years.
“(2) For a Class B felony, not more than 20 years or less than 2 years.
*131 “(3) For a Class C felony, not more than 10 years or less than 1 year and 1 day.
“(4) For a Class A felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 20 years.
“(5) For a Class B or C felony in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, not less than 10 years.”
The Habitual Felony Offenders Act provides that when a criminal defendant has been previously convicted of any two felonies, he must on conviction of a Class C felony be punished for a Class A felony. § 13A-5-9(b)(l). It is apparent, if not obvious, that the trial court sentenced defendant as if he had pleaded guilty to, and was adjudged guilty of, attempted robbery in the first degree. The transcript does not support such a determination. It would support a determination that he was guilty of attempted robbery in the third degree, which, according to § 13A-4-2(d)(4) constitutes a Class A misdemeanor.
As the transcript does not show that defendant was armed with a deadly weapon, “to-wit: a pistol” at the time of the alleged robbery and the admitted attempted robbery, for which he was convicted, we are unable to determine the degree of robbery of which he was convicted. The only statements made by defendant as to any pistol or other weapon or instrument are the following:
“THE COURT: What happened ... Why did they arrest you? What did you do that you got arrested for?
“THE DEFENDANT: They said I come in their house waving a pistol, or something like that.
“THE COURT: Now, did you do that or didn’t you?
“THE DEFENDANT: I guess I got to take the time. You won’t give me the time ...
“THE COURT: No, let’s talk about .. . Did you go in the house and wave the pistol?
“THE DEFENDANT: No, I didn’t wave no pistol.”
Notwithstanding any belief on our part that perhaps defendant was armed with a pistol, such belief would spring chiefly from the apparent fact that the court, defendant’s counsel and State’s counsel understood that defendant was armed with a pistol at the time. We cannot be governed by what they may have understood.
Throughout the entire hearing as to the defendant’s plea of guilty, there was an overcast of defendant’s express desire for a continuance in order that he would have time to have witnesses on his behalf. The court was not in error in proceeding toward a final judgment without any further delay, but the judgment of conviction and sentence was erroneous, in our opinion, as above explained. The judgment should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.